Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Individual and Representative Plaintiff Bryan Ward*

[*Additional counsel listed on signature block.*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN WARD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JIVE SOFTWARE, INC., ELISA STEELE, MARGARET BREYA, STEVE DARCY, ROBERT FRANKFURT, PHIL KOEN, TOM REILLY, CHUCK ROBEL, GABRIELLE TOLEDANO, BALAJI YELAMANCHILI, and TONY ZINGALE,<br><br>Defendants. | Case No. 5:17-cv-02993<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bryan Ward ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action as a public stockholder of Jive Software, Inc. ("Jive" or the "Company"), on behalf of himself and the class of public stockholders of Jive, against the members of Jive's Board of Directors (the "Board" or the "Individual Defendants") and Jive for violations of Section 14(d)(4) and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Sections 14(e) and 20(a).  Specifically, Defendants solicit

the tendering of shares of Company's common stock to ESW Capital, LLC ("ESW") through ESW's wholly owned subsidiary, Wave Systems Corp. ("Parent") and Jazz MergerSub, Inc. ("Merger Sub") (the "Proposed Transaction") through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders require this material information to decide whether to tender their shares or pursue their appraisal rights.

2.   On May 1, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") on April 30, 2017, by which Merger Sub would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Jive common stock for $5.25 per share in cash (the "Merger Consideration"). The Tender Offer, commenced on May 12, 2017, is set to expire at midnight Eastern Time on June 9, 2017. The Proposed Transaction is valued at approximately $462 million.

3.   In connection with the commencement of the Tender Offer, on May 12, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, inter alia, it fails to disclose material information about the financial projections prepared by the Company and relied upon by the Company's financial advisor, the potential conflicts of interest faced by the financial advisor, and the potential conflicts of interest faced by Company management. Without all material information, Jive stockholders cannot make an informed decision to exchange their shares in the Tender Offer. The failure to adequately disclose such material information constitutes a violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction about whether to tender their shares.

4.   For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the

Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.   The claims asserted herein arise under Sections 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.   The Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Jive maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.   Plaintiff is, and has been at all times relevant hereto, a stockholder of Jive.

9.   Defendant Jive is a Delaware corporation with its headquarters located at 300 Orchard City Drive, Suite 100, Campbell, California 95008. The Company's common stock is traded on the NASDAQ under the ticker symbol "JIVE."

10.   Defendant Elisa Steele ("Steele") has served as Jive's Chief Executive Officer and as a director of the Company since February 2015.

11. Defendant Anthony Zingale ("Zingale") has served as Chairman of the Board since August 2011 and as a director of the Company since October 2007.

12. Defendant Margaret A. Breya ("Breya") has served as a director of the Company since August 2013.

13. Defendant Stephen R. Darcy ("Darcy") has served as a director of the Company since April 2016.

14. Defendant Robert Frankfurt ("Frankfurt") has served as a director of the Company since March 2017.

15. Defendant Philip Koen ("Koen") has served as a director of the Company since March 2016.

16. Defendant Thomas J. Reilly ("Reilly") has served as a director of the Company since April 2013.

17. Defendant Charles J. Robel ("Robel") has served as a director of the Company since December 2010.

18. Defendant Gabrielle Toledano ("Toledano") has served as a director of the Company since November 2015.

19. Defendant Balaji Yelamanchili ("Yelamanchili") has served as a director of the Company since August 2016.

20. Defendants Steele, Zingale, Breya, Darcy, Frankfurt, Koen, Reilly, Robel, Toledano, and Yelamanchili are collectively referred to herein as the "Individual Defendants," and the Individual Defendants are sometimes collectively referred to herein as the "Board."

21. Defendants Jive and the Individual Defendants are collectively referred to as the "Defendants."

22. Non-party ESW is based in Austin, Texas. ESW buys and grows a number of mature business software companies, including Parent, Ignite Technologies, Trilogy, and Versata. ESW maintains offices at 401 Congress Avenue, Suite 2650, Austin, Texas 78701.

23. Non-party Parent is a Delaware corporation with principal executive offices located

at 401 Congress Avenue, Suite 2650, Austin, Texas 78701. Wave develops and produces hardware-based digital security solutions for sale in the United States and international markets. Parent is a wholly owned subsidiary of ESW.

24. Non-party Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent.

**CLASS ACTION ALLEGATIONS**

25. Plaintiff brings his claims against the Individual Defendants as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Jive common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 10, 2017, there were approximately 79,765,447 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Jive or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among inter alia:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

29. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

32. Jive furnishes social business software products and services. The Company provides a combination of community, collaboration, and social networking software, as well as social media monitoring platforms, including the Jive-n social intranet software for employee collaboration. Jive was founded in 2001 and is based in Campbell, California.

33. In a press release dated May 1, 2017, the Company announced that it had entered into the Merger Agreement with ESW, pursuant to which the Company will be acquired, and Jive stockholders will receive $5.25 in cash for each share of Jive common stock. This represents a total equity value of approximately $462 million.

34. In relevant part, the press release reads:

> CAMPBELL, Calif., May 1, 2017 – Jive Software, Inc. (Nasdaq: JIVE), today announced that ESW Capital, LLC, through its affiliate Wave Systems, is acquiring Jive and that Jive will become a part of the Aurea family of companies. The transaction is valued at $462 million. Under the terms of the agreement, an affiliate of Aurea will commence a tender offer for all of the outstanding shares of Jive common stock for $5.25 in cash per share. This represents a premium of 20% to the average of Jive's closing stock price during the three months ending on April 28, 2017. Jive's Board of Directors has unanimously approved the merger agreement and recommends that Jive stockholders tender their shares in the tender offer.
>
> "As the leader of the enterprise collaboration category, Jive has pushed the boundaries in how people work together for the past 16 years. It's this focus and vision that has enabled us to deliver industry-leading product innovation, attract a top-notch customer base with recognized global brands and achieve record earnings and profitability in the

last announced quarter," said Elisa Steele, CEO of Jive. "With Jive and Aurea coming together, we can deliver the superior end-to-end employee and customer experience companies require in today's digital landscape."

Aurea provides the technology platform and worldwide delivery capability to enable companies to build, execute, monitor and optimize the end-to-end customer journey across a diverse range of industries.

"Jive, in combination with Aurea, enables us to bring customer experience and employee and customer engagement together. We look forward to helping Jive clients get the maximum value out of their investment with Jive," said Scott Brighton, CEO of Aurea. "Everything we do is driven by our singular core value of client success."

**The Process Preceding the Execution of the Proposed Transaction**

35. The Board has conducted a scattershot process of selling the Company over the past two years leading up to the signing of the Merger Agreement. Beginning in April of 2015, the Company discussed potential strategic transactions with Party A and Francisco Partners IV, L.P. ("Francisco Partners"). In August 2015, the Company received an inquiry from another potential strategic acquirer, Party B. In September 2015, yet another inquiry was received from a fourth potential strategic acquirer, Party C. The Company held discussions with each suitor.

36. In October 2015, the Company sent proposed confidentiality agreements to Party A and Francisco Partners that were eventually executed. The Recommendation Statement provides no indication of the content of these agreements or whether they are still in effect.

37. In January 2016, Party A sent Jive a non-binding indication of interest to acquire the Company at a price of $5.50 per share in cash. The next day, Francisco Partners informed Morgan Stanley & Co. LLC ("Morgan Stanley") that it would not make an offer for the Company.

38. During a meeting on January 19, 2016, the Board directed Morgan Stanley to contact eight potential strategic acquirors, including Party B, Party C, Party D, Party E, and Party F. The Company subsequently executed confidentiality agreements with Party B, Party C, Party D, and Party F.

39. Party A reduced its indication of interest to $4.00 per share on February 9, 2016. Party C and Party D ceased discussions with the Company in March and April 2016.

40. On April 29, 2016, Party A increased its indication of interest to a range of $4.50 to

$5.00 per share in cash. Discussions continued with Party A throughout the summer, but no formal merger agreement was signed. In May 2016, Party F informed Morgan Stanley that it was not interested in a transaction with the Company.

41. In October 2016, the Company signed a confidentiality agreement with a potential strategic acquirer, Party G.

42. In late November 2016, Party A indicated its interest in acquiring the Company for $4.50 per share in cash, but not above $5.00. The Recommendation Statement never mentions Party A again, or its interest in a potential transaction.

43. In January 2017 and February 2017, Morgan Stanley contacted a strategic acquirer, Party H, and a financial sponsor, Party I, to gauge their interest in a potential transaction. Both parties entered into confidentiality agreements with the Company.

44. In February and March 2017, Party E and Party I informed the Company they were no longer interested in a transaction.

45. On March 10, 2017, the Company received an inquiry from a strategic acquirer, Party J. But two weeks later, Party J informed the Company that it was no longer interested in a potential transaction.

46. On March 22, 217, ESW submitted a preliminary indication of interest at a price between $4.50 and $5.25 per share in cash.

47. Morgan Stanley delivered bid process letters to Party G, Party H, and ESW following a Board meeting on March 29, 2017. These letters requested a best-and-final offer by April 4, 2017. The Recommendation Statement provides no reason that Morgan Stanley failed to deliver a letter to Party A.

48. Party G submitted an updated preliminary proposal at a price of $5.20 per share in cash. On April 4, 2017, ESW presented an updated preliminary proposal at a price of $4.50 per share in cash. On April 14, 2017, ESW revised its offer to a final proposal of $5.25 per share in cash, demanding exclusivity by April 17, 2017. On April 16, 2017, Party G submitted its final proposal at a price of $5.35 per share in cash, and removing merger terms that the Board had

previously considered material closing risks.

49. Despite the higher price offered by Party G, and because it believed that Party G was not devoted to a potential transaction, the Board agreed to enter into an exclusivity agreement with ESW on April 17, 2017.

50. The Board held a meeting on April 30, 2017. Morgan Stanley presented its financial analysis and fairness opinion to the Board, and the Board unanimously approved the Merger Agreement. Following this approval, the Company, ESW, Parent, and Merger Sub entered into the Merger Agreement.

**The Recommendation Statement Materially Misleads Stockholders By Omission**

51. Defendants filed the Recommendation Statement with the SEC in connection with the Proposed Transaction. As alleged below and elsewhere herein, the Recommendation Statement omits material information that must be disclosed to Jive's stockholders to avoid materially misleading stockholders and enabling them to render an informed decision with respect to the Proposed Transaction.

52. The Recommendation Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of Jive's financial advisors. This omitted information renders the Recommendation Statement materially misleading. If disclosed, the omitted information would significantly alter the total mix of information available to Jive's stockholders.

*Material Omissions Regarding the Company's Financial Projections*

53. The Recommendation Statement fails to disclose material information concerning the Company's financial projections. Morgan Stanley, according to the Recommendation Statement, used the Company's forecasts of unlevered, after-tax free cash flows in performing its discounted cash flow analysis. While the Recommendation Statement discloses the Company's forecasted levered free cash flows, it omits the unlevered, after-tax free cash flows that the Morgan Stanley found more useful for valuing the Company.

54. Additionally, the Recommendation Statement discloses that the Company updated its

financial projections throughout the process of selling the Company, but fails to disclose the effect of the updates on the projected value of the Company, the timing and basis of these updates, and the date for which the disclosed projections were finalized. These omissions make the remaining disclosures regarding the financial projections and financial analyses false and/or materially misleading as to the reliability of said projections.

### *Material Omissions Regarding Morgan Stanley's Financial Analyses*

55. The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Jive's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Jive's stockholders.

56. The Recommendation Statement fails to disclose various material elements of the financial analyses performed by Morgan Stanley. For example, Morgan Stanley performed a *Public Trading Comparables Analysis* that was presented to the Board, yet the Recommendation Statement fails to include the key inputs of this analysis, including (i) the reason Morgan Stanley used estimates of revenue and EBITDA prepared by equity research analysts in place of Jive's own estimates; and (ii) the revenue and EBITDA estimates prepared by equity research analysts for calendar years 2017 and 2018.

57. Morgan Stanley also prepared a *Discounted Equity Value Analysis*, but the Recommendation Statement omits Jive's 2018 net cash estimates, which were prepared by or based upon direct input from Company management.

58. Finally, Morgan Stanley prepared a *Discounted Cash Flow Analysis*, the Recommendation Statement omits: (a) the definition of unlevered, after-tax free cash flows; (b) the estimated unlevered, after-tax free cash flows for the Company for the period from the second

quarter of 2017 through the fourth quarter of 2017 and each of the calendar years 2018 through 2022 as well as the estimated unlevered free cash flows of the Company after the year 2022, as detailed in the above section on the Company's financial projections; (c) the inputs used to derive the range of discount rates of 8.17% to 10.55%; and (d) the implied terminal value multiples resulting from the analysis.

59. Without such undisclosed information, Jive stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

***Material Omissions Regarding the Process Leading to the Merger***

60. The Recommendation Statement discloses that the Company entered into confidentiality agreements with Party A, Francisco Partners, Party B, Party C, Party D, Party F, Party H, and Party I. However, the Recommendation Statement omits whether these confidentiality agreements contained standstill provisions that are still in effect, and whether these standstill provisions contained "don't-ask-don't-waive" provisions or other terms that would contractually forbid the counterparties from coming forward with a superior offer, or "topping bid," to the Proposed Transaction.

61. The disclosure of these agreements is particularly important in a transaction like this, where the Company has agreed not to "terminate, amend, modify or waive any rights under" any "standstill" or other similar agreement under most circumstances. Indeed, this provision in the Merger Agreement also strongly suggests that restrictive standstill terms are currently in place, and currently operating to contractually forbid the counterparties from making topping bids.

62. The omission of this information materially misleads Jive stockholders as to the ability of other parties to come forward with superior offers.

63. With respect to the April 17, 2017 Board meeting, the Recommendation Statement omits the Board's reasons for having "significant concerns regarding the likelihood that Party G would complete a transaction on the terms it was proposing, if at all" in light of Party G's April 16, 2017 final non-binding proposal which increased its proposed purchase price to $5.35 per share in cash, eliminated or mitigated a number of the terms on its material issues list that previously created meaningful closing risk to its proposal, and withdrew its request for support agreements from some of the Company's largest stockholders not represented to the Board. This concern overshadowed the $.10 price increase, even though Morgan Stanley had reached out to Party G again after the initial deadline.

64. The Recommendation Statement also fails to disclose the timing or content of any discussions between the Board and Jive management related to post-merger retention of Jive executives and management by Party G or ESW.

65. These omissions of material fact represent selective disclosures made by Defendants in the Recommendation Statement that significantly alter the total mix of information that Defendants used to market the Proposed Transaction. Defendants have misled investors into believing the Proposed Transaction is fair while refusing to disclose the full picture provided to the Board by its financial advisor.

66. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(e) of the Securities Exchange Act of 1934**

67. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

69. As discussed above, Jive filed and delivered the Recommendation Statement to its stockholders, which Defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

70. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

72. In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

73. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

74. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

75. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

### Claims Against All Defendants for Violations of Section 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

76. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

78. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

79. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

80. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation

Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

81. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

82. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

### Against the Individual Defendants for Violations of Section 20(a) of the 1934 Act

83. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

84. The Individual Defendants acted as controlling persons of Jive within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Jive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

85. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

86. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

87. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

88. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) declaring that the Recommendation Statement is materially false or misleading;

(C) enjoining, preliminarily and permanently, the Proposed Transaction;

(D) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

16
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 24, 2017                              **LEVI & KORSINSKY LLP**

                                        By: _____/s/ Rosemary M. Rivas_____
                                                  Rosemary M. Rivas

                                        Rosemary M. Rivas
                                        44 Montgomery Street, Suite 650
                                        San Francisco, California 94104
                                        Telephone: (415) 291-2420
                                        Facsimile: (415) 484-1294

                                        Donald J. Enright (to be admitted *pro hac vice*)
                                        LEVI & KORSINSKY LLP
                                        1101 30th Street NW, Suite 115
                                        Washington, DC 20007
                                        Tel: (202) 524-4290
                                        Fax: (202) 337-1567
                                        Email: denright@zlk.com

                                        *Counsel for Individual and Representative Plaintiff Bryan Ward*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Bryan Ward

    duly certify and say, as to the claims asserted under the federal securities laws, that:

    1. I have reviewed a complaint filed in the action(s);

    2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation;

    3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary;

    4. My transaction(s) in Jive Software, Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

    5. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

    6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

    I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 24th day of May 2017.

Signed: *[signature]*

NAME: Bryan Ward